[Civil No. 2013.  Filed January 31, 1923.]

[212 Pac. 381.]

# THOMAS E. CAMPBELL, ERNEST R. HALL, W. J. GALBRAITH, C. W. FAIRFIELD and RAYMOND EARHART, Constituting the State Land Department of the State of Arizona, and RUDOLPH KUCHLER, State Land Commissioner, Appellants, v. MULESHOE CATTLE COMPANY, a Corporation, Appellee.

1. PUBLIC LANDS—STATUTORY PREFERENTIAL RIGHT TO RENEW LEASE OF SAID LANDS HELD NOT ABSOLUTE.—Enabling Act, section 28, as reaffirmed by Constitution, article 10, section 3, dispenses with advertising of state lands on leasing for less than five years. Constitution, article 10, section 10, requires the legislature to enact proper laws for leasing of state lands for terms not longer than five years. Laws of Second Special Session of 1915, chapter 5, sections 30, 31, as amended by laws of 1919, chapter 166, provide for applications for lease and authorize the commissioner to investigate as to two or more applicants. Laws of Second Special Session of 1915, chapter 5, section 37, as amended by Laws of 1921, chapter 79, gives a lessee the preferred right to renewal for five years at a reappraised rental "provided, that if the commissioner does not deem the continued leasing of said land to be for the best interest of the state, said lease shall not be renewed." *Held*, that the preferred right of renewal is not an exclusive or absolute right, but implies a hearing or investigation to determine its quality, the discretion of the commissioner of land department not being limited to determining whether or not it is to the best interest of the state to lease the lands.

2. MANDAMUS — NOT PROPER REMEDY TO REVIEW DETERMINATION OF STATE LAND DEPARTMENT AS TO PREFERENTIAL RIGHT TO RENEW LEASE.—*Mandamus* is not the proper proceeding to review a determination of the land department as to a preferential right to renew a lease on state lands, and, if its action is arbitrary and justified by the facts, the remedy is by appeal.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  F. H. Lyman, Judge. Judgment reversed and case ordered dismissed.

2. Enforcement of state contracts by *mandamus*, note, 5 **Ann. Cas.** 595.

Mr. W. J. Galbraith, Attorney General, Mr. George R. Hill, and Mr. F. W. Perkins, Assistant Attorneys General, and Mr. John C. Gung'l, Special Counsel, for Appellants.

Messrs. Boyle & Pickett and Mr. D. B. Morgan, for Appellee.

ROSS, J.—The appellee, Muleshoe Cattle Company, applied to the state land department and the state land commissioner for the renewal of a lease that it, and its assignors, had held and enjoyed from the state, of three sections of land, to wit, 25, 26, and 35, township 12 south, range 21 east, in Cochise county, from April 20, 1916, for the term of five years; and, not being in default in any of the stipulations of the lease, contends it was entitled to a renewal thereof. The application for renewal was made upon a form furnished by the land commissioner, and was filed with the commissioner May 20, 1920. On June 29, 1920, E. A. Schilling filed with the commissioner an application for an original lease of the same sections. November 5, 1920, the commissioner approved the application of the Muleshoe Cattle Company, and thereafter, on November 11th, delivered to it for execution, properly filled out, a regular lease form for grazing lands, to expire June 30, 1925, or for five years, and fixed therein the sum of $19.20 per annum as the rental for each section.

November 5, 1920, Schilling, being dissatisfied with the rejection of his application and the allowance of the application of the Muleshoe Cattle Company, appealed from the decision of the commissioner to the state land department, and thereafter, on June 20, 1921, the members of the state land department held a hearing upon the conflicting applications.

Later, April 5, 1921, the department rendered its decision annulling the decision of the commissioner and ordered that lease of said three sections be given to Schilling. From this decision of the state land department the Muleshoe Cattle Company appealed to the superior court of Cochise county. Subsequently, on September 17, 1921, the court dismissed the appeal upon the ground that chapter 166, Laws of 1919, giving the right of appeal, was null and void. And said order of dismissal, not being appealed to the Supreme Court, has become final.

November 12, 1921, the Muleshoe Cattle Company instituted this suit in *mandamus* in the superior court of Maricopa county, setting forth in its complaint in ample detail all the above facts, to compel the state land department and the state land commissioner to reappraise the rental value of the premises, in the event no reappraisement had been made, and to execute a lease thereof to it. The defendants filed an answer in which they specially demurred to the petition upon several grounds, and, also, for want of facts. The defendants set out in their answer as a defense, among others, facts concerning the use by Schilling of the said premises for grazing purposes prior to the date of leases to the Muleshoe Cattle Company's assignors, a hearing and investigation thereof by the department, and a determination of the facts in favor of Schilling. The plaintiff demurred to the answer of the defendants. The court overruled defendants' demurrers, and sustained the demurrer of the plaintiff to the defendants' answer. The defendants choosing to stand upon their demurrers and answer and refusing to amend, upon motion of the plaintiff, Muleshoe Cattle Company, judgment was entered in its favor commanding defendants to reappraise the rental values of said premises and thereupon to make and execute renewal leases thereof

to the plaintiff, and to tender and deliver such leases upon plaintiff's acceptance thereof by the payment of all lawful fees and rentals due or payable.

The defendants appeal. Their assignments involve a construction of certain sections of the Land Code: Chapter 5, Laws 1915, and amendments; the Enabling Act, § 28, p. 104, Civ. Code 1913; and sections 3 and 10, art. 10, of the Constitution.

Section 28 of the Enabling Act provides that none of the granted lands to the state shall be sold or leased "except to the highest and best bidder at a public auction" after advertising in newspapers for the time and manner specified therein; "provided, that nothing herein contained shall prevent said proposed state from leasing any of said lands referred to in this section for a term of five years or less without said advertisement herein required." Section 3, article 10, of the Constitution, re-enacts, or reaffirms, section 28 of the Enabling Act. Section 10, Id., is a mandate to the legislature to enact proper laws for the sale of state lands, or the leasing thereof, for terms not longer than five years, for the protection of *bona fide* residents and lessees, in such manner that such lessees, in case of lease to others, shall be paid for improvements by succeeding lessees the value of improvements and rights, and providing that actual *bona fide* residents and lessees shall have preference to renewal of their leases at a reassessed rental, fixed as provided by law.

The legislature, in conformity with the mandate of the Constitution, enacted chapter 5, Laws of Second Special Session of 1915, and in sections 30 and 31, as amended by chapter 166, Laws of 1919, and section 37, as amended by chapter 79, Laws of 1921, provided for the filing of applications with the land commissioner for leases, and the rights of those

applying for renewals. Those sections are as follows:

"Sec. 30. *Application for Lease.*—All state lands shall be subject to lease, as in this act provided, but no state lands shall be leased for a longer term than twenty years, provided, that when any state land is leased for a term exceeding five years, then such lease shall be granted in accordance with the provisions of the Constitution, the Public Land Code, and the rules and regulations of the state land department, of the state of Arizona, and the rental of the same shall be subject to reappraisal and readjustment at the end of each five-year period of such lease. All applications for lease shall be made on blank forms to be prepared and furnished by the commissioner and shall be signed and sworn to by the applicant and filed with the commissioner at the state land office."

"Sec. 31. *Two or More Applicants.*—In case two or more applicants apply to lease the same land, the commissioner shall approve the application of the one who, after investigation or hearing by the commissioner, shall appear to have the best right to such lease, provided, that time or order of filing applications shall not be a controlling or a determining factor in deciding who is entitled to such lease, but if it should appear that none of the applicants has any right or equities superior to those of another, the commissioner, may, at a stated time, and after due notice to all such applicants, receive sealed bids submitted in accordance with such rules and regulations as the commissioner may adopt, and shall approve the application of the bidder, who in all respects, is eligible to hold a lease upon the land, and will pay the highest annual rental therefor; provided that the commissioner shall have the right to reject all the bids submitted, and provided further, that any person occupying a United States homestead, lying adjoining, shall, upon application as in this act provided, have a preference right to lease such number of adjoining acres as is necessary for the personal use of such homesteader."

"Sec. 37. *Preferred Rights to Renew.*—Upon application made to the commissioner, not less than thirty (30) nor more than sixty (60) days prior to the expiration of the lease, the lessee shall have a preferred right of renewal, bearing even date with the expiration of the old lease, for such term not longer than five (5) years, as the commissioner may deem proper, at a reappraised rental; provided, that if the commissioner does not deem the continued leasing of said land to be for the best interest of the state, said lease shall not be renewed. And provided further that the preferred right to renew shall not attach to any lease to a lessee not an actual *bona fide* resident of the state."

The appellee bases its right to a renewal lease, or a new lease, upon the provisions of section 10, article 10, of the Constitution, and section 37, Laws of 1915. We state his contention in his own language:

"It is inevitable from the foregoing provisions that the department may in its discretion determine whether or not the land shall be leased at all, or whether or not such is for the best interest of the state. If it determines that the lands shall not at all be leased, or that such is not for the best interest of the state, that is the end of the matter; but, if it determines that the lands shall be leased and that such is for the best interests of the state, as it did in this case, then its discretion is at an end, its duty is fixed by law, it must renew the antecedent lease or leases in the holder applying therefor, at whatever rental it determines upon reappraisal, which may be the same, a less or a greater rental, and all acts necessary or incident to such renewal are but ministrative in character. No other alternative exists and the department may not determine that the lands shall be leased but to some person other than the person to whom the preference right is so given."

The appellants, on the contrary, state that—

"If such theory is correct, then a renewal right is irrevocable, and runs with the land, and a

24 Ariz.—40

5-year lease is in fact a 10-year lease at the option of the holder, unless the land is withdrawn from leasing, and hence is in violation of the provisions of the Enabling Act which limits leases to five years, unless such leases are sold to the highest bidder in the manner provided in such law."

The Enabling Act makes it a condition that the state shall accept all the lands granted to it, in trust, for the purposes enumerated, and to be disposed of only in the manner therein provided, and that neither the land nor the proceeds of the land shall be used for any other purpose (section 28, Enabling Act). The state accepted said grants upon the terms and conditions stipulated in the Enabling Act. The compact between the state and the United States is, therefore, that none of the lands granted to the state shall be leased for a longer period than five years, without advertising, in the manner provided, the time and place and conditions of such leasing. The present transaction of leasing is sought to be sustained under the exception in the Enabling Act and Constitution that authorizes a leasing of such lands for terms of five years, or less, without advertisement.

Under the Enabling Act of the state of Wyoming, the lands granted to the state for educational purposes were granted and accepted under the same terms and conditions as all institutional and school lands were granted to this state; the language employed in the Wyoming Enabling Act being:

"But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years. . . ."

In *State* v. *State Board of School Land Commrs.*, 20 Wyo. 162, 122 Pac. 94, a proceeding in *mandamus* against the state board of school land commissioners involving the right by a lessee to a renewal of his lease, and in which it was contended, as here, that

the laws of the state gave him that exclusive right, the court said:

"Referring now to the relevant terms of the grant we observe that, following the provision requiring that all lands 'herein' granted for educational purposes shall be disposed of only at public sale, it is provided: 'But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years.' There seems to be no uncertainty in this provision, and it is doubtful if any attempt to explain it could make it clearer. It is needless to consider whether, without any provision in the grant expressly permitting the lands to be leased, the state would possess unlimited power to lease them, but it may be assumed that the state would in such case have that power. The provision was, however, inserted authorizing the lands to be leased, but only for periods of not more than five years, thus clearly limiting the power to lease the lands granted for educational purposes, and the grant was accepted with that limitation. That an act of the Legislature requiring or authorizing a contract to be made leasing such lands for a longer period than five years would violate the aforesaid provision of the grant, and therefore exceed the power of the state and its Legislature, is beyond question. And, clearly, without violating the compact completed upon its acceptance of the grant with the limitations and conditions imposed thereby, the state cannot at any one time enter into a contract leasing any such lands for a period longer than five years.

"It cannot be doubted that the state may lease any of the school lands repeatedly for a period not exceeding five years, and successively to the same person, under proper legislative regulations, so that the mere fact that a second or subsequent lease is made to a prior lessee of the same land will not constitute a violation of the terms of the grant. And we are not prepared to say that the land board may not lawfully be authorized to consider and act upon reasonable grounds of preference in passing upon two or more applications for the same land. But that is quite a different matter from a contract or

statutory obligation, secure against change by subsequent legislation, to grant and execute a lease covering a period exceeding the limitation upon the power of the state in that particular, and that upon no other consideration than the agreed rental.

"It is argued that the statute in question (section 613) complies strictly with the above-mentioned limitation expressed in the grant by providing for five-year leases. If, however, it confers upon the lessee, as contended, an absolute right, at the expiration of one five-year lease to a renewal thereof, and to subsequent renewals every five years, covering a total period of 20 years, and is to be read into every lease controlled by its provisions as a part of the contract, then, notwithstanding that a new lease is required to be executed at the end of each five-year period, the lands covered by such contract of lease would in effect be leased for a period exceeding five years, subject only to the lessee's option to surrender the lands, either by failure to demand a renewal or otherwise, and the provisions for reappraisement and fixing the amount of the future rent. This, we think, would be a clear evasion of the limitation expressed in the act of admission and accepted by the Constitution, for the state, by the original contract, would become obligated, if the contention of relator's counsel be correct, to renew and thereby continue the lease at the option of the lessee, subject only to the conditions above mentioned, for the period prescribed in the statute. The effect of such a contract would not seem to differ materially, so far as the question under consideration is concerned, from a contract leasing the lands for 20 years, but giving the lessee an option to surrender at the end of any five-year period."

If the only way to defeat the right of a lessee to a renewal, as is contended by the appellee, is that the commissioner "does not deem the continued leasing of said land to be for the best interests of the state," it follows that a lease for five years is necessarily a lease for ten years, at the option of the lessee, if the land is to be leased at all, and would constitute the leasing, or agreement to lease, for a term of five

years or more, and violate the Enabling Act as well as the Constitution.

"The statutory obligation" to lease the premises, if leased at all, to the former lessee in our opinion is just as obnoxious to the Enabling Act and Constitution as the Wyoming law, for the reason that few, if any, cases can arise where it will not be for the best interests of the state to lease its grazing lands. It is very improbable that the commissioner could, in one case in a thousand, honestly deem it against the state's interest to lease such lands, since the general, if not the universal, rule is that they are good for no other purpose; and it is not to be supposed that the commissioner would arbitrarily, or capriciously, decide that it was not for the best interests of the state just for the purpose of defeating a renewal. The practical impossibility of the commissioner ever honestly determining against the leasing of grazing lands upon the ground that it would not be for the best interest of the state is such that, if the appellee's construction of the law be adopted, the application for renewal would always have to be accepted.

We believe, however, that sections 30, 31 and 37 of the Land Code should be construed together. The provisions of section 31 empower the commissioner to investigate and hear contesting applicants, and to award the lease to the one that "shall appear to have the best right to such lease." In such hearing it would doubtless be the duty of the commissioner to take notice of the provision in section 37 giving the lessee applicant "a preferred right of renewal." We think that the preferred right of renewal given to the lessee is not an exclusive or absolute right, but is used in the relative sense of "better" or "superior" right, and implies a hearing or investigation to determine the quality of such right. The contention of the appellee, therefore, to the effect that the

only discretion reposed in the commissioner, or land department, is whether or not it is to the best interests of the state to lease the lands, is not correct. The statute imposes on the department the duty to investigate applications and hold hearings thereon, where conflicting applications are made for the same lands, and in doing so, of course, they will exercise discretion and judgment. *Campbell* v. *Caldwell,* 20 Ariz. 377, 181 Pac. 181; *Sutherland* v. *Taintor,* 57 Okl. 292, 156 Pac. 1174. In this case the facts, as disclosed by the pleadings, are that such a hearing was had and the lease awarded to Schilling.

*Mandamus* is not the proper proceeding to review the determination of the land department. If the action of the department was arbitrary and unjustified by the facts, as is contended by appellee, its remedy was by appeal. The record shows that such appeal was taken to the superior court and there dismissed by the court upon the ground that the law providing for appeal was defective in matter of procedure. We think the reason appellee did not appeal from the order of dismissal was that the legal profession generally had acquiesced in the correctness of the order, it being in accord with the rulings of other of the superior courts of the state. The contrary rule was not declared until the question was presented to this court in *Davis* v. *Campbell, ante,* p. 77, 206 Pac. 1078, and long after appellee's time for appeal had expired. The misunderstanding, pardonable under the circumstances, is unfortunate, and if it were possible to review the ruling of the land department on its merits, in this kind of a proceeding, we would do so.

Judgment is reversed and cause remanded, with direction to dismiss the case.

McALISTER, C. J., concurs.