52 P.(2d) 1090

STATE ex rel. McELROY v. VESELY,
Com'r of Public Lands, et al.
No. 4133.

Supreme Court of New Mexico.
Dec. 16, 1935.

Carl B. Livingston, of Santa Fé, for appellee Frank Vesely, Com'r of Public Lands.

R. M. Wiley, of Silver City, for appellees R. F. Stovall, Lawrence A. Cooper, and Emmet S. Kuykendall.

BRICE, Justice.

This is an appeal from a judgment dismissing an application for a peremptory writ of mandamus applied for by relator to compel the Commissioner of Public Lands to renew certain five-year leases of state lands which expired October 1, 1935. It is agreed by both the parties that there is but one question involved, and that is whether or not, under the New Mexico Enabling Act, the Constitution, and statutes, relator has such right to the renewal of a five-year lease of grazing lands that the Commissioner of Public Lands can be forced by mandamus to issue it.

The lands in question were granted to the State of New Mexico to be held in trust and disposed of in the manner provided in section 10 of the Enabling Act, the portion of which necessary to the determination of this case is as follows:

"Said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction to be held in the county seat of a county wherein the lands to be affected * * * shall lie: * * * Provided, That nothing herein contained shall prevent said proposed state from leasing any of said lands referred to in this section for a term of five years or

J. S. Vaught and Joseph Gill, both of Albuquerque, for appellant.

less without said advertisement herein required. \* \* \*

"Every sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof or the natural products thereof, not made in substantial conformity with the provisions of this act shall be null and void, any provision of the constitution or laws of the said state to the contrary notwithstanding."

By sections 9 and 10 of article 21 of the Constitution of New Mexico, the state and its people consented to the provisions of the Enabling Act with reference to the public lands granted and confirmed to the state in trust, and the conditions upon which the grants were made; and made it irrevocable, without the consent of Congress and the people of the state, through an amendment of its Constitution.

The law with reference to the leasing of public lands in New Mexico, material to the determination of this suit, is as follows:

Section 132-112. "All lands owned by the state shall be subject to lease as provided by law."

Section 132-113. "The annual rent to be charged by the commissioner of public lands for grazing lands belonging to the state, shall be based upon the classification and valuation as herein provided for, but in no event shall it be less than three cents per acre, and provided, that this act shall not apply where lands are advertised and let to the highest bidder," etc.

Section 132-114. "All leases for grazing or agricultural purposes shall be for a term of not exceeding five years except as hereinafter provided in this article."

Section 132-120. "Any lessee of state lands desiring to renew his lease shall make application in writing to the commissioner on or before the first day of August preceding the expiration of his lease; and any such lessee who has in good faith complied with all the requirements of his lease shall have a preference right to release for another term of years in accordance with the laws in force at the time of the expiration of his lease."

█ Ordinarily mandamus lies only to enforce a clear legal right (Carson Reclamation District v. Vigil, 31 N.M. 402, 246 P. 907) against one whose clear legal duty it is to perform the act necessary to the enjoyment of such right. 38 C.J. 600. If relator is entitled to the remedy of mandamus, then under the terms of his original lease and the law applicable thereto, which is read into and is a part of it, he has a clear legal right to a renewal of the leases and it is the clear legal duty of the Commissioner of Public Lands to renew them. If such a right and duty exists, it is by virtue of the original lease and section 132-120, Comp.St.1929, Ann., quoted. Section 132-123 has no reference to renewal leases, as such.

█ No such right can exist irrespective of what the Constitution or statutes of this state may provide. The original lease would be in effect for a longer term than

five years at the option of the relator and this is foreclosed by the Enabling Act. If by a preference right to release for another term of years, as appears in said section 132-120 of the statutes, is meant such clear legal right that mandamus should lie to enforce it, then the statute runs counter to the Enabling Act and is to that extent void; though we find it unnecessary to hold that to be its meaning. It is sufficient here to say that no such clear right could or does exist.

This question has been before the Supreme Courts of Arizona and Wyoming, in which Enabling Acts containing substantially the same provisions were construed, and it was held by each of those courts that statutes providing for a preference right of renewal of the same character of lease were void in so far as they purported to give an absolute right of renewal. Campbell v. Muleshoe Cattle Co., 24 Ariz. 620, 212 P. 381, 384; State v. State Board of School Land Commissioners, 20 Wyo. 162, 122 P. 94. We can add nothing to the reasoning in these opinions.

It is argued by relator that section 132-120, Comp.St.1929, Ann., is to be distinguished from the laws of Arizona and Wyoming on the same subject, in that the Legislature reserves the right to change the conditions of leasing so that the laws in force at the time of the expiration of the lease might permit the impairment of the obligation to lease. Counsel states: "This provision eliminates the contention that there is a contractual obligation which the legislature may not impair. The legislature may change its rules every five years if it so desires, but if it has laid down rules which are in force at the time the lease expires, then the commissioner is under the duty to issue the new lease in accordance with the rules as they exist at that time."

But this has reference only to its regulations with reference to leasing the lands. It does not affect the provision which purports to give a preference right to release "in accordance with the laws in force at the time of the expiration of his lease" *for another term of years to* the holder of the original lease. This statute is void as in contravention of the Enabling Act, if the Legislature intended thereby to confer an absolute legal right to renew such leases, which, however, as we shall see later was not the intention. We do not hold, therefore, that the statute in question is void, but we do hold that there cannot exist, by virtue of any statute that has been or can be passed by the Legislature, an absolute right of renewal of such lease under any terms or conditions, for it would violate the Enabling Act.

We do not hold that relator has not equities that should be considered by the Commissioner of Public Lands in exercising his judgment as to whether he will renew such leases. The interest of the state is of course to be first considered; but this does not have reference entirely to the amount of rental the state receives

from its grazing lands. Its financial interest is inseparable from the great livestock industry of the state and the financial welfare of those engaged in this business. It has been the policy of the state to recognize equities in those who have built up ranching businesses in the state that should be considered by the Commissioner of Public Lands in passing upon applications for renewal of expiring leases, and the absence of such general policy would be injurious if not destructive to that industry and in the long run seriously detrimental to the trust created or confirmed by the Enabling Act.

We have heretofore stated that section 132-120, Comp.Stats.Ann.1929, is void as in contravention of the Enabling Act if the Legislature intended thereby to confer an absolute legal right to renew such leases. Then we come to the question of whether or not we are justified in construing the statute as being consistent with the Enabling Act, and if consistent therewith then determine its meaning. That section 132-120, Comp.St.Ann.1929, has reference to all leases issued by the Commissioner of Public Lands is patent by its terms. It provides that "any lessee of state lands desiring to renew his lease," etc. This necessarily includes all lessees and all leases of every description and kind, and therefore refers to leases of five years and less which the Commissioner of Public Lands could make without advertisement and sale at public auction. Indeed, in view of section 132-112, Comp. St.Ann.1929, which reads, "All lands owned by the state shall be subject to lease as provided by law," and section 132-114, Comp.St.Ann.1929, the material part of which is as follows: "All leases for grazing or agricultural purposes shall be for a term of not exceeding five years except as hereinafter provided in this article," and of the fact that there is no provision in the statutes authorizing the leasing of state lands for a longer term than five years, it may be doubted that the commissioner is authorized to lease them for a longer term. If this is true, then section 132-120, supra, could only refer to leases of five years or less. It could not reasonably have been the intent of the Legislature to thereby give an absolute right of renewal, for it would not only run counter to the Enabling Act, just then enacted by the Congress and which must have been closely studied by the authors of the State Land Code, but inconsistent with section 14 (section 132-114, Comp.St. Ann. 1929), supra, of the same act. The Supreme Court of Wyoming in the case of State v. State Board of School Land Com'rs, supra, stated:

"And, clearly, without violating the compact completed upon its acceptance of the grant with the limitations and conditions imposed thereby, the state cannot at any one time enter into a contract leasing any such lands for a period longer than five years.

"It cannot be doubted that the state may lease any of the school lands repeatedly for a period not exceeding five years, and successively to the same person, un-

der proper legislative regulations, so that the mere fact that a second or subsequent lease is made to a prior lessee of the same land will not constitute a violation of the terms of the grant. And we are not prepared to say that the land board may not lawfully be authorized to consider and act upon *reasonable grounds of preference* in passing upon two or more applications for the same land. But that is quite a different matter from a contract or statutory obligation, secure against change by subsequent legislation, to grant and execute a lease covering a period exceeding the limitation upon the power of the state in that particular, and that upon no other consideration than the agreed rental." State v. State Board of School Land Com'rs, 20 Wyo. 162, 122 P. 94, 97.

The Supreme Court of Arizona in the Campbell Case, supra, construing section 37 of Arizona Land Code (Laws 2d Sp.Sess.1915, c. 5, § 37, as amended by Laws 1921, c. 79), which is as follows: "Upon application made to the commissioner, not less than thirty (30) nor more than sixty (60) days prior to the expiration of the lease, the lessee shall have a preferred right of renewal, bearing even date with the expiration of the old lease, for such term not longer than five (5) years, as the commissioner may deem proper, at a re-appraised rental," said: "We think that the preferred right of renewal given to the lessee is not an exclusive or absolute right, but is used in the relative sense of 'better' or 'superior' right, and implies a hearing or investigation to determine the quality of such right." The Arizona Supreme Court, it is true, construed section 37 in connection with another section of that Code providing generally for leasing land in cases where there were two or more applicants; but this was done to arrive at the meaning of the words "preferred right of renewal" in the statute construed. In view of the Enabling Act and section 132-114, Comp.St.Ann.1929, quoted, we hold that the Legislature did not intend such right of renewal to be absolute, but as the Supreme Court of Arizona held so we hold; that it is used in the sense of a better or superior right—a question for investigation and the exercise of judgment and discretion by the Commissioner of Public Lands.

In case of conflicting applications the Commissioner of Public Lands should investigate all applications, using discretion and judgment, and award the lease, should there be contests or more than one application therefor, to the one who has the better right under the facts of the case. In this sense the act does not violate the Enabling Act, but the district court reached the correct conclusion and entered the proper judgment.

The judgment of the district court will be affirmed and the cause remanded. It is so ordered.

SADLER, C. J., and HUDSPETH, J., concur.

BICKLEY, Justice (concurring specially).

I think it may be fairly said that chapter 82, Laws 1912, "An Act * * * To Provide For The Management, Control And Disposal Of The State Lands," as amended, contemplates that the commissioner may issue leases for terms of five years or less, and also for five years and more.

The Enabling Act contemplates the same thing.

The statute, section 14 (section 132-114, Comp.St.1929), provides: "All leases for grazing or agricultural purposes shall be for a term of not exceeding five years *except as hereinafter provided.*" (Italics mine.)

Employing the method of construction used in State v. Graham, 32 N.M. 485, 259 P. 623, we should expect to be able to refer to some provision "hereinafter" in the act for leases "for a term * * * exceeding five years" and accepting the logic of the Wyoming Supreme Court, post, we would find such provision in section 20 (section 132-120, Comp.St.1929), which is as follows: "Any lessee of state lands desiring to renew his lease shall make application in writing to the commissioner on or before the first day of August preceding the expiration of his lease; and any such lessee who has in good faith complied with all the requirements of his lease shall have a preference right to release for another term of years in accordance with the laws in force at the time of the expiration of his lease."

The Supreme Court of Wyoming in State v. State Board of School Land Com'rs, 20 Wyo. 162, 122 P. 94, in a proceeding in mandamus against the State Board of School Land Commissioners involving the right of a lessee to a renewal of his lease, and in which it was contended, as here, that the laws of the state gave him that exclusive right, clearly demonstrated that if the statute (Comp.St.Wyo. 1910, § 613) entitling state land lessees to renewals of their leases for five-year periods aggregating twenty years confers upon the lessee, as contended, an absolute right at the expiration of one five-year lease to a renewal thereof, and to subsequent renewals, then, notwithstanding that a new lease is required to be executed at the end of each five-year period, the lands covered by such contract of lease would in effect be leased for a period exceeding five years, subject only to the lessee's option to surrender the lands, either by failure to demand a renewal or otherwise, and certain provisions for fixing the future rent.

The Supreme Court of Arizona in Campbell v. Muleshoe Cattle Co., 24 Ariz. 620, 212 P. 381, in a similar case, put the stamp of approval on this reasoning, and so do we.

The Wyoming Supreme Courts cited decisions in support of their reasoning and decision which long antedated their discussion. The Wyoming decision itself had been handed down more than two months prior to the adjournment of our 1912 Legislature which enacted the statute here under consideration. It is not

to be supposed that the members of our Legislature were unaware of these legal principles. On the contrary, in my opinion, they were conscious that in section 20 they were providing for a term of "exceeding five years." No other provision of the act fits so well with "except as hereinafter provided" in section 14, quoted supra.

Section 20, heretofore quoted, is more than a direction to the commissioners that he award a preference to the holder of an existing lease if in his discretion and judgment the *equities* created by the fact of his having been the lessee are not outweighed by other considerations. I deem this statute a legislative declaration of policy binding on the commissioner to the effect that long periods of leasing to the same faithful lessee who is instrumental in building up the important livestock industry is desirable and beneficial. A similar legislative policy seems to have been declared by the Legislatures of Wyoming and Arizona, noted in the cases heretofore cited.

In the absence of this or a similar statute, the commissioner under his constitutional power to direct the "control, care and disposition of all public lands" (Const. art. 13, § 2), could have adopted a policy of issuing either short-term or long-term leases, under such rules and regulations as he might adopt. But section 20 is a mandate to the commissioner to lease for successive terms to the same person who near the expiration of each term makes timely application to *re-lease*. If it is not a mandate, it does not amount to anything. The commissioner could have exercised a discretion to do the same thing without the enactment of section 20. This mandate to the commissioner to accord a preference right to *re-lease*, however, carries with it the conditions that the lessee shall have *in good faith complied with all the requirements of his lease,* and that he must take the renewal "in accordance with the laws in force at the time of the expiration of his lease."

By the 1912 act the power was vested or confirmed in the commissioner to make rules and regulations for "the control, management, disposition, lease and sale of state lands" (section 132-102, Comp.St. 1929).

Such rules and regulations when made, if not in conflict with any superior law, have the effect of "laws." Among others, "Rules Relating to Preference Rights on Grazing Leases and Bidding Therefor" have been adopted by the commissioner. Among said rules are the following:

"1. As provided by law, a grazing lessee who has, in good faith, complied with all the requirements of his lease, is entitled to a preference right to a new lease for an additional term of five years.

"2. Application for new lease under preference right should be filed on or before August 1st, preceding the expiration date of existing lease.

"3. Application for lease by other than the preference right holder must be filed on or before September 1st, next preceding the expiration date of the existing lease to receive consideration.

"4. When application or bid is received from other than the holder of preference right and within the time as above prescribed, notice will be given the lessee immediately after September 1st of the highest bid or offer received and such lessee will be allowed until September 30th to meet such bid.

"5. If the preference right holder shall meet the highest bid that has been received, lease *will be awarded to him and such bid or offer rejected.* If the preference right holder shall fail to meet the bid as specified in the notice and within the time allowed unless for good cause shown extension of time shall be granted, he will be deemed to have lost his preference right and lease will be awarded to the highest bidder when all requirements of law shall have been met and complied with." (Italics mine.)

These rules show the commissioner's interpretation of the statute. If the lessee shows compliance with rules 1 and 5, "lease will be awarded to him." This interpretation is correct and is binding upon the commissioner.

That this interpretation has been of long standing is shown by rule 19, which was promulgated by the commissioner in 1912 when the enactment by the Legislature of the Public Lands Code was fresh in the minds of those interested in such matters and was a forerunner of the present rules heretofore quoted, as follows: "Rule 19. Renewals.—Any lessee desiring to renew his lease for another term of years must file application therefor on blanks furnished by the state land office, on or before August 1st, prior to the expiration thereof, and any such lessee who has faithfully complied with the terms of his lease will be given a preference right for another term of years at a rental value to be fixed by the state land office." It is noted that the commissioner construed the statutory words "right to release for another term of years" as meaning "renewal," even though it may have been the practice to issue a "new lease for an additional term of five years."  .

In Temple Lodge No. 6, A. F. & A. M., v. Tierney, 37 N.M. 178, 20 P.(2d) 280, 284, we decided that early interpretation of statutes could not be upset by courts if reasonable, saying: "This early interpretation and uniform practice is highly persuasive, if not controlling. The principle is familiar that, in a case of doubt, courts will sustain the reasonable construction long and uniformly followed by the co-ordinate branches of the government. It is not comity alone that dictates this rule. It is because of the unfortunate and far-reaching results often produced by a judicial decision rendering illegal what has been theretofore recognized as legal. If this rule were not generally observed, legal decisions might, by their upsetting results, do more harm than good. In such

cases it is deemed wiser to leave the desired reform to the political departments which can minimize the consequences of change by limiting its results to the future." The commissioner does not contend in the case at bar that the statute and his rules do not provide for a preference right of renewal absolute in character. What he makes plain in his brief is his contention that if the statute is construed to provide for a preference right of renewal for another term *without any publication of notice and not at public auction,* then the statute would be repugnant to the provisions of the Enabling Act and to the Constitution. This was also the view of the trial court as shown by his legal conclusion quoted, post.

In the case at bar, as presented to the lower court and here, the appellant had complied with section 20 of the statute and rule 1 and tendered compliance with rule 5. Yet we must conclude that the decision of the trial court was correct. It seems to me that counsel have missed the real point in the case, although they have approached it at times.

The trial court concluded as a proposition of law: "That in so far as said Section 120 of Chapter 132 of New Mexico Statutes Annotated, 1929 Compilation, attempted to grant to said Plaintiff and Relator John T. McElroy such an absolute and legally enforceable right to a renewal of his said expiring five (5) year grazing lease No. G-5454 *without any publication of notice and not at public auction* as

would entitle him to compel the renewal thereof by mandamus, the same was and is in contravention of Section 10 of the Enabling Act as passed by the Congress of the United States and approved on the 20th day of June, A. D., 1910 and Sections 9 and 10 of Article 21 of the Constitution of New Mexico and to that extent was and is void and of no effect." (Italics mine.)

Too little consideration has been given in the argument to the significance of the underscored phrase "without any publication of notice and not at public auction."

The difficulty has come from the failure to perceive that neither section 20 (section 132-120, Comp.St.1929) nor any portion of the act relating to public lands which accords "a preference right to release for another term" *without any publication of notice and not at public auction.*

Statutes are presumed to be constitutional until the contrary is clearly shown, and it is to be presumed that the legislators were cognizant of constitutional provisions and that its enactments would operate in accordance with and not contrary to the Constitution. And, furthermore, in the instant case more than this presumption appears.

Section 132-113, Comp.St.1929, contemplates the issuance of leases "where lands are advertised and let to the highest bidder" and also other leases of land not advertised and so let. As we have seen, the Legislature provided, for leases in effect for a term exceeding five years in

section 20 of the act. There is nothing in this which is in contravention of section 10 of the Enabling Act. Said Enabling Act clearly contemplates that the lands granted to the state may be leased for a term exceeding five years "to the highest and best bidder at a public auction * * * notice of which publication shall first have been duly given by advertisement, which shall set forth the nature, time, and place of the transaction to be had, with a full description of the lands to be offered, and be published once each week for not less than ten successive weeks in a newspaper of general circulation published regularly at the state capital, and in that newspaper of like circulation which shall then be regularly published nearest to the location of such lands so offered." Why else would it be said therein, "provided, That nothing herein contained shall prevent said proposed state from leasing any of said lands referred to in this section for a term of five years or less without said advertisement herein required"? ·

The case at bar is lost to the appellant, not because of any repugnancy between the statute and the Enabling Act or the Constitution, but because his lease is not one carrying a vested preference right of renewal for the reason that it was not obtained at a public auction in conformity with the provisions of the Enabling Act.

The lease relied upon by appellant recites: "And it is hereby Covenanted and Agreed by both parties hereto, that this lease is made subject to all the provisions and requirements applicable hereto, which are to be found in various acts of the Legislature of New Mexico, the same as though they were fully herein set forth, and said Laws, so far as applicable to this lease, are to be taken as a part hereof."

Appellant argues correctly that section 132-120, Comp.St.1929, must be read into his lease. He is equally bound by the provisions of section 10 of the Enabling Act. He claims a right to a lease in effect for a period of ten years, yet he is confronted by the fact that his lease was awarded to him "without any publication of notice and not at public auction."

The statute, designed no doubt to give stability to the livestock industry by affording a guarantee to the faithful lessee of a continued and renewed enjoyment of his lease and improvements and equipment established in connection therewith, will not work unless the provisions of the Enabling Act are complied with. There is nothing to indicate that the Legislature expected it to work without compliance with the Enabling Act. If these Enabling Act provisions are complied with, the policy apparently declared by the legislature will work.

The fact that the advertisement would be an expense does not alter the legal situation. Yet when it is contemplated that the land described in a number of applications to lease might be included in a single advertisement as they are in case of advertisement of lands covered in numer-

ous applications to purchase, the cost per acre spread over a term of ten or greater periods of years would be infinitesimal. Even in the case at bar the lease being for over 22,000 acres according to official estimates, the cost of advertising an auction when spread over a term of ten years would be less than a twentieth of a cent per acre, the advertisement costing $100.

Except to the extent I have mentioned, the decisions in the Wyoming and Arizona cases cited, supra, are of no value to us because of the difference between the laws the courts of those states were considering and ours.

The Wyoming statute entitling state land lessees to renewals of their leases for five-year periods aggregating twenty years was held to be void as violating the condition upon which school lands were granted by the act of admission in 1890, that leases should not extend longer than five years.

Our Enabling Act or act of admission in section 10 thereof, as we have said, contemplates that the state may issue leases for a term of five years or less without advertisement and for a term of five years or more with advertisement.

The Arizona Enabling Act (section 28) as quoted in Campbell v. Muleshoe Cattle Co., supra, is quite similar to ours, but our statutes are different. Section 37, Laws 1915, 2d Sp.Sess., as amended by Laws 1921, c. 79 quoted in the opinion would seem standing alone to have the same purpose and effect as our section 20 (section 132-120, Comp.St.1929), but the court said that in interpreting the statute, section 31, Laws 1915, 2d Sp.Sess., as amended by Laws 1919, c. 166 must be construed together with section 37. I quote said section 31 with the emphasis given certain provisions thereof by counsel for appellant, as follows:

"Two or More Applicants. In case two or more applicants apply to lease the same land, the Commissioner shall approve the application of the one who, *after investigation* or *hearing* by the Commissioner, shall *appear* to *have* the *best right* to to such lease, provided, that *time* or *order* of *filing applications* shall *not* be a *controlling* or a *determining factor* in deciding who is entitled to such lease, but if it should appear that none of the applicants has any right or equities superior to those of another, the Commissioner may, at a stated time, and after due notice to all such applicants, receive sealed bids, submitted in accordance with such rules and regulations as the Commissioner may adopt, and shall approve the application of the bidder, who in all respects, is eligible to hold a lease upon the land, and will pay the highest annual rental therefor; provided, that the Commissioner shall have the right to reject all the bids submitted, and provided further, that any person occupying a United States homestead, lying adjoining, shall, upon application as in this act provided, have a preference right to lease such number of adjoining acres as is necessary for the personal use of such homesteader."

And so the Arizona court was impelled to hold: "Enabling Act, § 28, as reaffirmed by Const. art. 10, § 3, dispenses with advertising of state lands on leasing for less than five years. Const. art. 10, § 10, requires the Legislature to enact proper laws for leasing of state lands for terms not longer than five years. Laws 2d Sp.Sess. 1915, c. 5, §§ 30, 31, as amended by Laws 1919, c. 166, provide for applications for lease and authorize the commissioner to investigate as to two or more applicants. Laws 2d Sp.Sess. 1915, c. 5, § 37, as amended by Laws 1921, c. 79, gives a lessee the preferred right to renewal for five years at a reappraised rental 'provided, that if the commissioner does not deem the continued leasing of said land to be for the best interest of the state, said lease shall not be renewed.' Held, that the preferred right of renewal is not an exclusive or absolute right, but implies a hearing or investigation to determine its quality, the discretion of the commissioner of land department not being limited to determining whether or not it is to the best interest of the state to lease the lands."

We have nothing in our statute which is anything like the provisions of the Arizona statute, section 31, and there is no provision that I can find that gives the commissioner a discretion to refuse to award a lessee a preference right to release if such lessee demanding a renewal has in good faith complied with the requirements of his lease, and as heretofore pointed out, the commissioner's rule No. 5, quoted, asserts the contrary of any such discretion

as Arizona, section 31, reposed in the Arizona commissioner.

So it is inappropriate under the statutes governing us to reach the conclusion arrived at by either the Arizona or the Wyoming courts.

From all the foregoing, I am brought to a concurrence in the result; but it appearing that the opinion prepared by Mr. Justice BRICE takes unwarranted liberties with the statute and dilutes the preference right to a renewal to a mere discretion of the commissioner, to a discretion which the commissioner would have without the statute (see State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027), I cannot concur in the reasoning adopted by my Brethren. If the statute granting a preference right to the lessee "to release for another term of years" means no more than the majority opinion says it does, then it was an idle gesture on the part of the Legislature.

It seems to me that the commissioner has power independently of the statutory preference right to consider "equities" which may exist in favor of a lessee of lands not advertised and let to the highest and best bidder at public auction, and in his discretion to prefer him as a lessee over other applicants seeking to lease the same lands, and also if the lessee has been awarded a lease at a public auction he is a "preference right holder" under the statute if he has in good faith complied with all the requirements of his lease and shall meet the highest bid that has been made

by any other applicant and has substantial vested right of preference to a renewal of his lease, which right rests upon the statute and is not dependent upon the discretion or grace of the commissioner.

It seems to me that a striking down of the statutory preference right is destructive of what we all agree is the declared public policy. If this statutory preference right as I construe it were not destroyed, the situation would be this: An applicant for an initial lease desiring an absolute preference right of renewal contemplated by the statute would see to it that the lands he desires to lease are put up at public auction; then if a lease is awarded to him, he takes it with a preference right of renewal subject to defeat only through his own choice or default. On the other hand, if he chooses to take a lease at private letting, he will at its expiration take his chances on getting a renewal lease resting his faith solely on the proper exercise of the commissioner's discretion.

Considerations of expediency such as expense of advertising might enter into the choice of methods, but this election would be up to the applicant.

I see no reason why both systems may not be workable side by side, and I see no reason for destroying one of them.

ZINN, Justice (concurring specially).

Faced with the proposition of determining whether 1929 Comp.St., § 132-120, gives to the lessee of our state lands an absolute preference right to a renewal as contemplated by the statute, and one enforceable by mandamus, we are met at the outset with the inescapable conclusion that section 132-120, if it contemplated an absolute preference right, runs counter to section 10 of the Enabling Act.

To my mind the Legislature never contemplated grazing and agricultural leases for more than five years. The Legislature intended to give the livestock industry of New Mexico security of tenure. Laws 1912, c. 82, contemplated an absolute preference right. For more than twenty years the administrative officials of the State Land Office and the lessees of our state lands believed the right of preference to be absolute. If a lessee had in good faith complied with the requirements of his lease he could secure a renewal. This was for the best interests of the state. The livestock industry was assured that a good-faith compliance with the terms of their lease would not leave them to the mercy of the Land Commissioner. They believed that their rights would be protected in the courts. They could improve with security. The grass and the soil would be properly husbanded. This is as it should be.

Here we are faced with the most important question before this court in many years. The livestock industry, the backbone of the economic structure of our state, is vitally interested in a determination of the question here decided. The method of the administration of our approximately twelve and one-half million acres of school and institutional lands in-

trusted to us by a paternal federal government for the benefit of our children and our institutions await the decision in this case.

The opinion of the majority gives to the Commissioner of Public Lands a discretion he already has. State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027. The right to renew a lease is not absolute. Under the majority view the livestock industry is not secure. The instant case is an example. The opinion by Mr. Justice BICKLEY, if it became the law, would apparently save the statute from the interdiction of the Enabling Act, yet would compel the livestock industry, in order to secure an absolute preference right of renewal, to have the state land within their pastures advertised and put up at public auction. An expensive system! To my mind advertised agricultural and grazing leases were not originally contemplated. Advertising and public sale is an expense and a burden which the livestock industry could not endure. I know of no advertised grazing or agricultural lease. The State Land Office does not advise me to the contrary. Under the opinion of the majority the livestock industry had best turn to Congress about to convene for an amendment of section 10 of the Enabling Act, and to the people for confirmation. The oil industry did. Const. of N.M. art. 24. The livestock industry ought to. To my mind this is the only certain way of securing an absolute preference.

I concur in the result.