[Civil No. 3746. Filed November 30, 1936.]

[62 Pac. (2d) 693.]

HOWELL MANNING, Appellant, v. GUY PERRY, Appellee.

Mr. D. B. Morgan, for Appellant.

Messrs. Hummel & Hummel, for Appellee.

ROSS, J.—This action is between Howell Manning, appellant, and Guy Perry, appellee, and involves a determination of their respective rights to a lease of section 7, township 17 south, range 11 east, Gila & Salt River Meridian, Pima county, Arizona. Both made application to the State Land Department to lease the section, Manning's application being for a renewal and Perry's for an original lease.

The section is institutional land belonging to the state and is adaptable for grazing purposes. The grazing capacity of this section and those surrounding

it is about 25 to 30 head of cattle per year. This section was originally leased from the state by one Elevia Sayre on September 30, 1919, for a period of 5 years. Manning, with the approval of the state land commissioner, bought and took an assignment of this lease and at its expiration the commissioner renewed it for him. He had three renewals, for periods of 5 years each, the last ending September 30, 1934. August 16, 1934, he filed his application with the commissioner for a renewal lease for 5 years, and on August 27, 1934, Perry filed his application for an original lease. After investigation and hearing the commissioner approved the application of Manning and from his decision Perry appealed to the Land Department, consisting of the Governor, Secretary of State, attorney general, state treasurer, and state auditor. This body, after hearing, affirmed the commissioner's decision. Perry, being dissatisfied with the action of the department, gave notice of appeal to the superior court of Pima county, in which county the land is located. The case was tried in that court, without the aid of a jury, *de novo,* as the statute seems to contemplate it should have been. Sections 2963, 2966, Rev. Code 1928. The superior court, after hearing the case, decided, in effect, that neither applicant had under the law any preference to a lease and that the one who should have it "is largely within the discretion of the trial court based upon certain recognized principles of equity," and directed the Land Department to give the lease to Perry. Manning has appealed, insisting that under the law and facts he was entitled to have his lease renewed.

The evidence is not materially in conflict. From it we deduce the following ultimate facts: Manning, a native-born citizen of the United States and of Arizona, was, when the trial was had and had been for more than 12 years, engaged in the cattle-raising busi-

ness and owned or had under lease the two northern tiers of sections of township 17 south, range 11 east; that is, sections 1 to 12, inclusive, except section 8, and had ranging on said lands between three and four hundred head of cattle. He acquired the said range and the improvements thereon at a cost of $4,000. The 11 sections were inclosed with a fence, except on the east side of section 7 and the west side of section 8, a fence not being needed there on account of a mountain that is practically impassable for stock. There were two miles of fence on the west and south sides of section 7, of a value of $300. Water for his cattle was located on sections 4 and 10 and cost approximately $500 and $2,000, respectively, to store and deliver to his stock.

Perry owned 20 calves and had under lease, on shares, 45 to 50 head of cattle that ranged on sections 8 and 17. He owned, by purchase from a third party some time prior to 1930, section 17, on which he and his family lived at the time he filed his application for lease of section 7. In 1930 he filed a homestead entry under the United States land laws on section 8, but was not living on it. Perry knew when he filed his homestead on section 8 that all the surrounding lands were owned or under lease from the state by Manning.

We first call attention to the fact that the administration of state lands is in the hands of the State Land Department. Chapter 71 (§§ 2946–3033), Revised Code of 1928. It is this department that may sell and lease the lands owned by the state or held in trust by the state. Where, as here, two parties are contesting before the Land Department for a lease of state lands, the rule to guide or control the action of the land commissioner is prescribed in section 2965 and reads as follows:

"If two or more applicants apply to lease the same land, the commissioner shall approve the application

of the one, who, after investigation or hearing by the commissioner, appears to have the best right to such lease. The order of filing shall not be a controlling factor in deciding who is entitled to such lease. If it appear that none of the applicants has any right or equities superior to those of another, the commissioner may, at a stated time, and after due notice to all such applicants, receive sealed bids submitted in accordance with such rules and regulations as he may adopt, and shall approve the application of the bidder, who, in all respects, is eligible to hold a lease upon the land, and will pay the highest annual rental therefor, or he may reject all bids. Any person residing upon contiguous land for which he has an allowed United States homestead entry or for which he has received patent from the United States upon his homestead entry, shall, upon application, have a preference right to lease such amount of contiguous state land as is necessary for his personal use.''

The commissioner did not offer to sell the lease as therein provided because he evidently concluded that one or the other of the applicants appeared ''to have the best right to such lease.'' It could not be Perry for, although he had a homestead entry on section 8, he was not residing thereon, but was living and residing on section 17. If he had been residing on his homestead entry, under said section 2965 he would have had ''a preference right to lease such amount of contiguous state land as is necessary for his personal use.'' Section 2972 gives a lessee, if he is a *bona fide* resident of the state and has kept the covenants of his lease, a preferred right of renewal for a term not longer than 5 years, at a reappraisal rental, if his application therefor is made not less than 30 nor more than 60 days prior to the expiration of his lease. Doubtless it was a recognition of this right in Manning to a renewal that caused the commissioner not to offer the lease to the highest bidder, as provided in section 2965, *supra,* and to approve Manning's application;

and for the same reason, evidently, the department approved of the commissioner's decision.

While the superior court on an appeal from the Land Department tries the case *de novo,* it should not be forgotten that the court is not the agency appointed by law to lease state lands. The legislature has vested that power in the Land Department. If it investigates and determines which of two or more applicants appears to have the best right to a lease, its decision should be accepted by the court unless it be without support of the evidence, or is contrary to the evidence, or is the result of fraud or misapplication of the law. The court may have the power to take evidence on that issue and to ignore the department's findings thereon and make its own independent findings, yet the rule adopted and followed by appellate courts here and elsewhere of deferring their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be adhered to in land lease cases. The Land Department is certainly as well qualified as the court to investigate and pass upon the conflicting claims of applicants for leases and determine which has the best right to the lease. In this case the department has found that a citizen, who has for more than 12 years been upon and using section 7 and 10 and other contiguous sections as a range for his cattle, and who has expended large sums of money in fencing such premises and developing water thereon for the use of his stock, has a better right to a lease of said section 7 than a person who located section 8 as a homestead in 1930, with full knowledge of all the surrounding circumstances, and who obtains no statutory right to a lease because he does not live on his homestead. This conclusion of the Land Department is certainly based upon substantial evidence and, that being so, the court should not have substituted its

judgment, as to who should have the lease, for the judgment of the Land Department.

In speaking of the functions of the court on an appeal from the Land Department, it is said, in *Miller* v. *Hurley,* 37 Wyo. 344, 262 Pac. 238, 241, the discretion of the Land Department in leasing the public lands should be controlling "except in the case of an illegal exercise thereof, or in the case of fraud or grave abuse of such discretion." It was further said in that case:

"In the first place, nowhere in the Constitution or statutes is the district court, or a judge thereof, granted power to lease state lands. Both the Constitution and the statutes repose that power in the land board. In exercising such power, the land board exercises a wide discretion. *State* v. *Board of Land Commissioners,* 7 Wyo. 478, 53 Pac. 292; *Cooper* v. *McCormick,* 10 Wyo. 379, 69 Pac. 301; *Baker* v. *Brown,* 12 Wyo. 198, 74 Pac. 94; *Bucknum* v. *Johnson,* 21 Wyo. [26] 39, 127 Pac. 904. If, by the simple expedient of an appeal from the decision of the land board, that discretion can be taken from the board and vested in the district court, as contended by appellant, then the discretion of the land board amounts to nothing on a contested case. It is an empty thing, a mere *ignis fatuus.*"

And, we may add, a practice which permits the court to substitute its discretion for that of the Land Department would give us as many leasing bodies as there are superior courts in the state, or fourteen in number, instead of one as provided for by the legislature—an intolerable situation.

It seems to us that the provisions of section 2972, *supra,* giving a lessee a "preferred right of renewal" cannot be ignored. We have twice touched upon the meaning of the phrase (preferred right of renewal) without definitely defining it. *Boice* v. *Campbell,* 30 Ariz. 424, 248 Pac. 34; *Campbell* v. *Mule-*

*shoe Cattle Co.,* 24 Ariz. 620, 212 Pac. 381, 384. In the Muleshoe case we said:

"We think that the preferred right of renewal given to the lessee is not an exclusive or absolute right, but is used in the relative sense of 'better' or 'superior' right, and implies a hearing or investigation to determine the quality of such right."

In the Boice case we suggested that its possible meaning was that the Land Department should regard it as an equity in the case. In *State* v. *Vesely,* (N. M.) 52 Pac. (2d) 1090, 1092, the right to a renewal lease under a New Mexico statute (section 132–120, Comp. Stats. 1929) reading:

"Any lessee of state lands desiring to renew his lease shall make application in writing to the commissioner on or before the first day of August preceding the expiration of his lease; and any such lessee who has in good faith complied with all the requirements of his lease shall have a preference right to release for another term of years in accordance with the laws in force at the time of the expiration of his lease," was involved.

It will be observed that this statute is not very different from our section 2972, *supra.* The court there, holding that such statute does not and cannot give an absolute right of renewal of such lease, said:

"We do not hold that relator [applicant for renewal] has not equities that should be considered by the Commissioner of Public Lands in exercising his judgment as to whether he will renew such leases. The interest of the state is of course to be first considered; but this does not have reference entirely to the amount of rental the state receives from its grazing lands. Its financial interest is inseparable from the great livestock industry of the state and the financial welfare of those engaged in this business. It has been the policy of the state to recognize equities in those who have built up ranching businesses in the state that should be considered by the Commissioner of Public

Lands in passing upon applications for renewal of expiring leases, and the absence of such general policy would be injurious if not destructive to that industry and in the long run seriously detrimental to the trust created or confirmed by the Enabling Act''; and added: ''We hold that the legislature did not intend such right of renewal to be absolute, but as the Supreme Court of Arizona held so we hold; that it is used in the sense of a better or superior right—a question for investigation and the exercise of judgment and discretion by the Commissioner of Public Lands.''

It is quite true that the preferred right to a renewal of a lease is not a contractual right between the lessee and the state, enforceable as against the state. If it were, the prohibition in the Enabling Act (section 28) against the leasing of the state's public lands for a period longer than 5 years without advertisement could be evaded. So, as between the state and the lessee, this provision of the law gives no right. When, however, the Land Department is called upon to decide to which of two or more conflicting applicants a lease to state land shall be given, this statutory preference right can, and should, be considered by the department. In other words, as between adverse claimants, the right is a very substantial one, and a recognition of it by the Land Department in no way conflicts with the Enabling Act, the state Constitution, or the land laws of the state.

But if the court was right in its conclusion, that neither of the applicants had a preference right under the law and facts, it should have remanded the case to the Land Department with directions to follow the procedure set forth in section 2965, *supra,* and to lease the land to ''the bidder, who, in all respects, is eligible to hold a lease . . . and will pay the highest annual rental therefor.'' When none of the applicants has a superior right or equity, the commissioner of the Land Department, and not the court, attends to

the leasing and must let the land, after competitive bids, to the highest bidder, if he is in all respects qualified. This provision of the statute the court ignored and directed the department to give the lease to Perry without competitive bids. This was clearly erroneous.

There is no showing that the Land Department illegally exercised its discretion in awarding a renewal lease to appellant Manning, or that there was any fraud or abuse of such discretion, and we think that the trial court erred in substituting its judgment for that of the Land Department.

The judgment is therefore reversed and the cause remanded, with directions that further proceedings be had in accordance with this opinion.

LOCKWOOD, C. J., and McALISTER, J., concur.