# WYODAK CHEMICAL COMPANY v. BOARD OF LAND COMMISSIONERS OF WYOMING, ET AL.

(No. 1993; March 9, 1937; 65 Pac. (2d) 1103)

For the appellant, the cause was submitted upon the brief of *E. E. Wakeman* and *E. C. Raymond* of Newcastle and *Wilfrid O'Leary* of Cheyenne.

For the respondents, the cause was submitted on the brief of *Bard Ferrall* of Cheyenne.

BLUME, Chief Justice.

On April 16, 1929, the State Board of Land Commissioners of this state granted a mineral lease covering section 16, township 48 north, range sixty-five west, in Weston County, Wyoming, to one Jason F. Ralston, authorizing the lessee to remove bentonite from the land for a period of five years, the lease expiring April 15th, 1934, and providing for a rental of $100 per annum, payable annually in advance on April 15 of each year, that amount to be applied on a royalty, payable to the state, of two per cent of the value of bentonite mined. The lease was not in conformity with the statutes of this state, for it is provided by section 91-803, Rev. St. 1931, that the royalty on mineral or oil lands shall be not less than 5% of the gross output of mineral or oil from the lands. No bentonite was mined during the term of the lease. The lease was duly assigned on February 13, 1932, to Charles F. Martens and Leman Davis, and the assignment was approved by the Land Board on April 7, 1932. These assignees made a further assignment on October 5, 1933, to appellant, and approval of the board was given on October 9, 1933. On January 8, 1934, the Wyodak Chemical Company, the appellant, filed with the Commissioner of Public Lands an application for a lease of the land above mentioned, for the purpose of mining bentonite thereon, stating that it had purchased the former lease. The sum of $111 was remitted with the application to cover the fees and advance rental. The application was accompanied by a letter stating that appellant would commence to mine on this tract "within a year or so." On April 13, 1934, Edwin Busfield, respondent herein, also made application for a lease of the same land, remitting the sum of $211 to cover the fees and advance rental for the land. The appellant was notified of Busfield's filing. On May 1st, 1934, the Commissioner of Public Lands allowed Busfield's application with the recommendation that he should be required to

pay a minimum royalty of 7½%. Appellant, after notification of the action by the commissioner, took an appeal to the State Land Board, asking the reversal of the decision of the commissioner, and that it be granted a lease on the land. It did not offer to meet the amount of rental offered by respondent. The latter answered, asserting that no mining operations had been carried on or attempted under the former lease, and praying that the decision of the commissioner be upheld and that he be granted a lease on the land. A hearing was had before the Land Board on November 15th and 16th, 1934, and on the latter date the Land Board rescinded the action of the Commissioner of Public Lands and ordered the sale of the lease on the lands mentioned at public auction to the highest and best bidder. The commissioner on November 21, 1934, fixed the date of sale for December 11, 1934, and so notified the parties. On November 27, 1934, appellant asked for rehearing, which, however, was ignored and rejected, and the appellant duly notified thereof. Notice of appeal to the district court was given by appellant, one notice being filed with the Commissioner of Public Lands on December 8, 1934, and one in the district court of Weston County, Wyoming, on December 12, 1934. On the latter date the district court fixed appellant's bond on appeal in the sum of $750, which was filed on December 22, 1934. In the meantime, and on December 11, 1934, a sale at auction was duly held of the lease of the land. Two bids were submitted, one by the American Colloid Company, and one by respondent. The appellant submitted no bid. The respondent's bid was the highest, offering an advance annual rental of $1320 and 20% of the value of the refined bentonite mined from the land. The lease was thereupon sold to respondent. Thereafter, and on the same date, the appellant offered in writing to meet

the highest and best bid made at the sale, without, however, tendering any money.

The appeal to the district court was duly heard on February 10, 1936. It appeared on the trial that the appellant had done some development-work on properties neighboring on the land in question, during 1935, expending the sum of about $5000, but it does not appear that any work was done at any time on the land covered by the lease in question. On February 21, 1936, the trial court rendered its decision, finding that the decision of the State Board of Land Commissioners upon conflicting applications for mineral lease on the land in question should not be set aside and that the right of Edwin Busfield to a lease of the land pursuant to his bid made on December 11, 1934, should not be disturbed. Judgment to that effect was accordingly entered, and from that judgment an appeal has been taken to this court.

1. The appeal taken to the district court was an appeal from the action of the State Board of Land Commissioners in directing a sale of the leasehold in the land in question. The district court upheld that action, and the only real question before us is as to whether or not the court erred in doing so. It is the contention of the appellant that the board had no right to order such sale; that the appellant had a preferential right to the lease, and had, accordingly, the right to meet the rental bid by the respondent at the time of his application. It relies upon the provisions of section 91-801, Rev. St. 1931, which provides:

"The board of land commissioners is hereby authorized to lease for a term of ten (10) years, with the preferential right in the lessee to renew his lease for successive periods of ten (10) years, any state or school lands supposed to contain coal, oil or minerals, and to make and establish rules and regulations governing the issuance of such leases and covering the conduct of

development and mining operations to be carried on thereunder."

The attorney general contends that the right given by section 91-801, supra, means a renewal on the identical terms and under the identical conditions of the old lease; further that the old lease was in violation of the statute in not requiring a royalty of five per cent of the gross output of minerals, and that hence the right of renewal did not exist at all in this case. If the term "renewal" must be construed that narrowly, then the contention would be valid. It may bear the meaning attributed to it by the attorney general. Grace v. Strickland, 188 N. C. 369, 124 S. E. 856, 857, 35 A. L. R. 1296. But it has also been held that the term has no legal or strictly technical signification. Flanagin v. Hambleton, 54 Md. 222, 227; 54 C. J. 380. If the contention of the attorney general were correct, then it might well be argued that the preference right sought to be given by the statute is in violation of the act of admission and the amendment thereto (c. 34, Sess. L. 1935) limiting a lease to the period of ten years, and in violation of the constitutional provision accepting the grant of Congress with its limitations. But in considering the preferential right granted in connection with grazing lands we have held that the right granted is not absolute but qualified. State ex rel. v. Board, 20 Wyo. 162, 122 Pac. 94; Mercer v. Thorley, 48 Wyo. 141, 43 P. (2d) 692. It is, as held in New Mexico and Arizona, an equity—a better or superior right which must be taken into consideration, and can be taken into consideration without violating an enabling act similar to ours. Manning v. Perry, (Ariz.) 62 P. (2d) 693; Campbell v. Cattle Co., 24 Ariz. 620, 212 Pac. 381; Boice v. Campbell, 30 Ariz. 424, 248 Pac. 34; State v. Veseley, (N. M.) 52 P. (2d) 1090. Under such a right, as may be gathered from the foregoing cases, the old lessee must meet all reasonable terms and conditions

which may be laid down from time to time by the board, and which other persons are willing to meet, thus making the lease, not a continuing one in violation of the enabling act and the constitution, but in fact a new one. We think, in order to avoid any constitutional objections, that we should construe the clause in section 91-801, supra, giving a preferential right, in a similar manner. In other words, we think we should not construe the term "renewal" as used in that section as narrowly as contended for by the attorney general, but give it the broader meaning already indicated. But it is plain that if we once admit that the legislature did not intend to give a preferential right upon the identical terms and conditions of the old lease, then we are at once confronted with the fact that the legislature has fixed no definite rental, terms or conditions, which the old lessee must meet in order that he may be given the preference right, and has fixed no definite stage in the proceedings leading up to the lease when such right may be exercised. All these matters are left open. And clearly, they are left open for the action of the board. This court is not authorized to fix the conditions which the legislature has not fixed; that must be left to the board which under the constitution and the laws has the management of the lands of this state. Having that management, it necessarily has the right, in so far as not limited by the constitution and the statutes, to use its own discretion as to the manner of leasing and the terms and conditions thereof. It would seem to be wholly arbitrary to say that the exercise of the preferential right under the statute must be permitted by the board when some one else makes a bid at or before the expiration of the old lease. We find nothing in the law which forbids the board to ask for other bids; nothing which prohibits it from selling the leasehold at auction. The board must act for the best interests of the state. We find nothing in section 91-801, supra, which com-

pels the board to lease mineral lands pursuant to private applications; and, in fact, nothing which would hinder it from determining in the first instance that no private applications would be considered, but that the leasehold should be sold at auction. Whether the preferential right should be extended after such auction is another matter. We do not find in the record before us anything which suggests fraud or abuse of discretion, or violation of any rule of the board, and we are constrained, accordingly, to hold that the board had the right and the power to order a sale at auction of the leasehold interest involved in this action, and that the trial court did not err in upholding it in so doing.

2. That disposes of the appeal taken from the board to the district court, since, as stated, it was taken from the order directing a sale at auction. The trial court, however, apparently by consent of the parties, passed upon the validity of the sale to the respondent, and they expect us to do so here. It is hard to see, since the order directing the sale at auction was legal and valid, how we can now say that it was not permissible to carry it out. Counsel for appellant think that the appeal stayed the hands of the board. The statute relating to appeals from the board provides as follows:

"The party appealing shall, within thirty days after the decision complained of, file with the commissioner of public lands, a notice in writing to the board of land commissioners stating that such party intends to appeal to said district court from said decision; and at the same time shall file a like notice in the said district court; and upon the filing of said notices, the appeal shall be deemed to have been taken; provided, however, that the party appealing shall within fifteen days after the said notices have been filed, enter into an undertaking to be approved by the clerk or the judge of the said district court and to be given to the appellees, and to be in such an amount as said court or the judge thereof shall fix, but in any case, shall not be less than five hundred dollars, and conditioned that the appellant

shall prosecute his appeal without unnecessary delay and will pay all costs and damages which the appellees or any of them may sustain in consequence of such appeal."

Counsel seem to contend that the statute itself, in giving 30 days in which to file notice of appeal and 45 days in which to file a bond, stayed the hands of the board. That contention is a novel one. No authorities to that effect have been cited and none have been found by us. Counsel argue:

"Surely the Board cannot proceed to nullify the appeal by proceeding, within the time limit for giving the bond, to carry out the order which has been attacked. It is not the law that an appeal from the land board can be made abortive by the board in all cases. * * * Surely the board cannot be permitted, during the time fixed for giving the bond, to carry out its order from which the appeal is taken, and thus completely destroy the statute granting the appeal."

We fully agree with counsel that the board cannot render an appeal abortive. If the appeal herein had been sustained, the action of the board in directing the sale, and as a result, the sale itself, would have been nullified. The board in proceeding to hold the sale, and the respondent in bidding at the sale, took the risk that these proceedings might be invalidated by the court pursuant to the appeal, just as an execution creditor (leaving cases in which a stay bond is given out of consideration) takes the risk of having to repay money made pursuant to a sale in an action in which an appeal has been taken. The rights acquired under the execution would fail, if the appeal should succeed. It would be otherwise if the appeal should be unsuccessful. These principles have come in question in cases involving entries on United States Public Land. It was held in Anderson v. Woodward, 57 Colo. 53, 140 Pac. 198, that if the entry of the first applicant is rejected by the local land office, but that action is reversed on appeal,

the acceptance of a second entry pending the appeal will become void. On the other hand, it has been held that if the first application is rejected, and an appeal is taken, and pending the appeal a second application is filed, and the appeal is dismissed, the second application will be upheld. In such case, the first applicant is in no position to challenge the action on the second application. Kendall v. Bunnell, 56 Cal. App. 112, 205 Pac. 78. See also Miller v. Robertson, 35 Land Dec. 136. That is substantially the situation here. There is no material difference, so far as the effect is concerned, between the dismissal of an appeal, voluntary or otherwise, and an appeal which is finally unsuccessful. So, according to Kendall v. Bunnell, supra, the action taken pending the appeal, or time of appeal, will be upheld if the appeal is unsuccessful; for the appellant is now in no position to claim that an act done pursuant to a valid order should be held for naught. The conclusion would seem to be sound, if we consider the situation as a whole: If an action of the board in directing the sale is actually valid, and no one appeals, the sale pursuant to the order, made in the proper manner, is, of course, valid also. Simply because some one doubts the validity of the order would not alter the matter. If the doubt is so strong that an interested party wants to test the strength of his doubt by appealing, the logic of the situation is not changed. The unsuccessful appeal merely dissipates the doubt which previously existed. So that it would seem to be clear, in the absence of a legislative provision to the contrary, that if an order directing a sale is valid, as finally adjudged by the court, then the execution of that order in the proper manner is valid also. That would seem to be particularly true in cases in which the order is carried out before an appeal is actually pending. And that is the situation in this case. It is suggested that the bond in this case was not a supersedeas bond. If it was, the

appeal was not perfected till the bond was filed on December 22, 1934. Some cases hold that to be the rule. 4 C. J. S. 1090; 3 American Jurisprudence 172-173. But it makes no difference in this case whether that is the rule or not. The sale in this case was held on December 11th, 1934, before the notices of appeal were filed. Originally a writ of error operated as a supersedeas. 3 C. J. 1273; 4 C. J. 1109. It would hardly be contended that it operated as such before the writ was actually sued out. In an appeal, notice of the appeal ordinarily takes the place of a writ of error. And the appeal is not perfected until the proper notice has been given. 4 C. J. 1090; 3 American Jurisprudence 161. The statute in this case states that upon filing of the notices (note the plural) the appeal shall be deemed to have been taken, so that it is clear that the appeal cannot be deemed to have been taken until both notices of appeal had been filed, and that was on December 12, 1934, a day after the sale had been had. The district court acquired no jurisdiction, no power in and over the proceeding until that time. The jurisdiction in and over the proceeding, which the board had, was not taken away from it until at least that time. If the board still retained jurisdiction, no reason exists why it could not exercise it, subject, of course, to the final action on the appeal. Such would be the holding in cases of appeal from a court, and we see no reason, and none has been pointed out, why the rule should be otherwise in case of an appeal from the land board. See Public Utilities Commission v. Rhode Island Company, 42 R. I. 391, 403, wherein it was assumed that, as a matter of course, the rate fixed by the commission would go into effect, unless proceedings for an appeal were actually initiated. It may be that the legislature has the right to stay the power of the board during the 45 days of the possibility of an appeal. But such a provision should not be read into the law by mere con-

jecture, for great losses to the State might result therefrom. We are unable to find in our statutes any purpose of the legislature to thus stay the hands of the board. Nothing, we think, is discernible therein, which indicates that the action of the board, legal if no appeal is taken, shall become illegal if, perchance, an ineffectual appeal is taken thereafter.

3. And finally it is contended that the appellant should now be permitted to take the lease at the terms offered to and accepted by the respondent. As we have already stated, the appellant, after the offer of the respondent had been accepted, offered to take the lease at respondent's terms, but no advance rental, in money or the equivalent thereof, accompanied appellant's offer. The board required the cash rental (not the royalty) in advance. Rule 87, in force January 8, 1932. The rule provides that "the advance rental on all mineral operating leases shall be fixed by the board of land commissioners in each individual case." We held in Walls v. Evans, 38 Wyo. 103, 265 Pac. 29, that an application, not accompanied by fees and rental, as required by the rule of the board, should, ordinarily at least, be ignored. The rule of the board applicable in this case is not as specific as the rule considered in that case. No advance rental was especially and directly fixed by the board, and could not well be in a case in which the leasehold was sold at auction. But the board directed the sale; respondent paid the cash rental of $1320 in advance, and taking rule 87 and all the facts in the case into consideration, it would seem that the advance rental was, indirectly, fixed when respondent's offer was accepted, so as to bring the case within the spirit of the decision in Walls v. Evans, supra. We are unable to see upon what principle we could hold that the board can be compelled to issue a lease without payment or tender of the cash rental. That would certainly seem to be true in the absence of an agreement

that the payment of such rental should be deferred. There was no such agreement here, but, as stated, rule 87 and the other facts and circumstances indicated that payment should be in advance. The case of Walls v. Evans was decided in 1928. It is unfortunate, if the land in question is as valuable as counsel seem to think it is, that appellant did not conform to the rule of that case. Moreover, a period of 27 months has now elapsed since the sale of the leasehold, and it does not appear, either by the record before us or otherwise, that payment or tender of the required amount has even now been made, so that we are unable to see how we could direct the board to issue a lease to appellant.

Furthermore, we are not satisfied that the record before us affirmatively and convincingly shows that the appellant is entitled to a preferential right. We cannot believe, as already indicated, that the legislature meant to give such right without reference to existing circumstances and conditions, and that it meant to deprive the board of land commissioners of any and all discretion. No development work whatever was done under the old lease. There was evidence that some development work for mining bentonite was done on neighboring lands. This was in 1935, after the expiration of the old lease. It was not done on the state land, nor does the testimony show that the development work on neighboring land also at the same time was of benefit to the state. We have examined the old lease, which is in the record. There is no express covenant therein that the lessee and his assigns will do development work on the property. However, practically all its provisions relate to mining, and it is stated that the lease is executed in consideration of the sum of $100 minimum rental per annum, and "also in consideration of the payment of royalties as hereinafter provided," thus indicating that the payment of royalty was one of the conditions of the lease. That necessarily presupposes

the mining of the property. In the case of McPherson v. Richards, 125 Miss. 219, 87 So. 469, the statute provided that the board of supervisors "in the case of uncleared lands may lease them for not exceeding seven years in consideration of the clearing and improvement thereof, and with condition that the lessee shall have the preference to lease the same for another term of fifteen years or less at an annual rental to be agreed upon as in other cases of leasing." The court, speaking of the preference right thus given, stated:

"In this case it clearly appears that the lessees did not perform their contract by clearing the land and building houses as agreed in the first lease. They did not make the improvements they contracted to make, and therefore they are not entitled to a preference in the leasehold."

The case is authority, or very nearly authority, that the appellant had no preferential right in the case at bar. At least it throws a doubt on the power of this court to overturn the action of the state board of land commissioners herein. See also Welch v. Bohart, 40 Okl. 439, 135 Pac. 1065. And that is true also when we consider the matter of future development. It can scarcely be doubted that the statutes relating to the leasing of mineral lands contemplate, generally speaking, that the lessee shall mine the land. It might, of course, be of benefit to the state, that no immediate mining operations should be begun, but that these should, for the time being, be confined to adjacent property. But it does not appear that the board intended to have mining operations on the land in question here deferred to a future time. It may have intended to have the land of the state developed immediately. And if that was the case, it was not bound to extend a preference right to a party who was unwilling or unable to do so. The ability of the appellant to do so does not appear in the record. We do not think that

we are bound to presume it. Nor is the willingness of the appellant to do so shown by the record. Respondent offered "to start development work and mining on the state deposit immediately, if lease is granted to me." A letter, accompanying the application of the appellant, stated that it would commence development on the land in question "in a year or so." True, it also, on December 11, 1934, offered to take the lease "at the highest and best bid received." But it is at least doubtful that it intended to or did in any way modify the statement of the letter mentioned above; particularly is that true in view of the fact that no development had been done on the land under the old lease. Taking all the facts above mentioned into consideration, we are not convinced that the appellant has shown itself entitled to an absolute right of preference, and that we should overturn the action of the board.

4. A motion was filed herein to dismiss the appeal because of non-compliance with rule 37 relating to abstracts of the record. In view of our conclusion on the merits of the case, we need not pass on it. But it may not be amiss to elucidate the rule somewhat at this time. An abstract of the record is not intended as a mere index. 4 C. J. 389. While it should be concise, it should be sufficiently complete, so that the court can take and examine it, and from it determine the merits of the case. It has been well stated in 4 C. J. S. 1478:

"Since an abstract is intended to take the place of the record in presenting and determining the case in the appellate court, and the court will not usually look into the record for matter not covered in the abstract, it is essential that the abstract be full and complete enough, in and of itself, without the necessity for referring to the record, clearly to show the errors relied on, and present so much of the record and bills of exceptions as is pertinent to a decision of the questions presented for review."

To the same effect is 4 C. J. 391.

From what we have said, it follows that the judgment below must be affirmed.

*Affirmed.*

KIMBALL, J., concurs.

MR. JUSTICE RINER:

If in my judgment the court was required to dispose of this case on its merits, my concurrence in what is said in the foregoing opinion would be announced, believing, as I do, that what is there said is an accurate statement of the law governing the matters considered. I think, however, the motion to dismiss should prevail. The abstract of record submitted by appellant in large measure fails to comply with rule 37 of this court. It is only necessary to check it with the language of that rule to perceive wherein that is so. Notwithstanding the warning given by the filing of the motion to dismiss no effort was made to correct the abstract save by adding the required counsel's certificate that it was a "true and correct abstract." This it certainly was not under the rule aforesaid. I realize perfectly that dismissal under the rule is discretionary, but I think this is a case where that penalty should properly be imposed. Upon the authority of Brewer v. Folsom Brothers Co., 43 Wyo. 433, 5 P. (2d) 283; Simpson v. Occidental Building & Loan Association, 45 Wyo. 425, 19 P. (2d) 958; Fryer v. Campbell, 46 Wyo. 491, 28 P. (2d) 475; In re St. Clair's Estate, 46 Wyo. 446, 28 P. (2d) 894; Bosick v. Owl Creek Coal Co., 48 Wyo. 46, 41 P. (2d) 533; and Scott v. Ward, 49 Wyo. 243, 54 P. (2d) 805, the appeal should be dismissed.