STATE ex rel. HANDEL OIL CO., RESPONDENTS, v.
STATE et al., APPELLANTS.
No. 8662
Submitted March 11, 1946. Decided March 30, 1946.
167 Pac. (2d) 844

Mr. R. V. Bottomly, Atty. Gen., Mr. Fred Lay, 1st Asst. Atty. Gen., and Mr. A. F. Lamey and Mr. James M. Haugher, both of Billings, for appellants.

Mr. Ralph J. Anderson, of Helena, and Mr. G. J. Jeffries, of Roundup, for respondent.

MR. JUSTICE ANGSTMAN, delivered the opinion of the Court.

Relator brought this action in mandamus to compel defendants to execute an oil and gas lease to it covering certain described lands situated in Petroleum county. Relator prevailed in the court below and defendants have appealed.

From the pleadings and evidence adduced at the hearing, it appears that relator was given a five-year lease on the land in March, 1923, which was thereafter renewed from time

to time for additional successive five-year periods, so that the last lease expired on March 28, 1943.

The defendant land board advertised the property for leasing on December 4, 1945. At the time of the bidding the lands were offered in three separate parcels. The Farmers' Union Central Exchange Inc. was the highest bidder for each parcel. At the conclusion of the bidding on each parcel, Mr. Burton, who conducted the proceeding on behalf of the board, offered to representatives of relator who were present at the bidding the opportunity to match the bid of the Farmers' Union Central Exchange, but the representatives of relator declined to make decision then and asserted that it could match the bid any time before the board approved the lease. The Farmers' Union Central Exchange thereupon deposited certified checks covering the amount of its bids on the three parcels.

At the meeting of defendant board on December 12, 1945, relator presented to the board a personal check in the amount of the bid of the Farmers' Union Central Exchange and demanded a lease on the property. The defendant board declined to accéde to the demand and passed a motion that leases on the three tracts be issued to the Farmers' Union Central Exchange. Other facts will be alluded to as we discuss the legal questions involved.

Determination of the right of the parties makes it necessary to interpret section 1882.15, Revised Codes 1935, and particularly the italicized portion thereof. That section reads:

"In the case of all leases issued under this act where oil or gas has been produced, the state board of land commissions shall at the expiration thereof, or termination for any cause, advertise the land held thereunder for re-leasing and lease the same to the highest responsible bidder therefor at public auction.

"In the case of all leases issued under this act where oil or gas has not been produced, the board shall at the expiration thereof, or termination for any cause, advertise the land

held thereunder for releasing and lease the same to the highest responsible bidder therefor at public auction, if in the judgment of the board such advertising and public auction will result in leasing of the land on terms more advantageous to the state; *provided, however, that when the lands are advertised for re-leasing, any person, association, firm or corporation who held such lease at the expiration thereof, whether oil or gas had been produced thereunder or not, shall have the privilege of re-leasing the same at such highest responsible bid offered therefor, upon such terms and conditions as may be prescribed by the said board or by the legislative assembly; and the board shall have the privilege of rejecting any and all bids.''*

In addition to the above facts it was shown that at the time of the bidding Mr. Burton stated that the leasing was subject to the approval of the state land board and that the board would meet to consider the bids at 2 o'clock on December 12th.

Relator contends that in order to have a responsible bid action of the board was required to pass upon the sufficiency of the bids and that the former lessee had the right to await action of the board before asserting its right to preference.

Defendants rely upon that part of section 1882.15, which after giving the prior lessee a preference, does so with this qualification "upon such terms and conditions as may be prescribed by the said board or by the legislative assembly."

Their contention is that the board has prescribed as a condition that the preference be asserted at the time of the bidding. Mr. Burton testified that an affidavit which he had filed contained statements which he would reiterate on the witness stand if interrogated on the matter. It shows that he has conducted at least 500 sales at public auction of state lands or leases; that in nearly all cases involving land which had previously been leased the prior lessee was present; that the uniform practice of the department was to accept bids until the bidding ceases, at which time the prior lessee is given the opportunity of matching the highest bid. If the

prior lessee does not match the highest bid the lease or sale is then and there awarded to the highest bidder subject to the confirmation and approval of the state land board. If the prior lessee matches the highest bid at the time of the sale, additional and higher bids are called for. If no higher bid is made the lease or sale is awarded to the prior lessee who has matched the highest bid, subject to the confirmation of the board. The sale or lease is not completed until either the prior lessee refuses to match the highest bid or the other bidders refuse to increase the bid which was matched by the prior lessee. The evidence discloses that Mr. Burton advised the representatives of relator at the time of the bidding that if they desired to exercise the right of preference they would have to appear "then and there and tender the necessary amount."

It was admitted by witnesses who testified to the custom and practice of the board that the practice and custom above alluded to was that governing sales or leases of land for agricultural or grazing purposes, and that they never had a case before involving the preference right of a prior lessee on oil land but that they did have many oil and gas leases which had been awarded on competitive bidding and the practice and procedure has been the same on oil lands as on grazing and agricultural land.

There appears no reasonable justification for a different rule applicable to oil and gas lands sold or leased under competitive bidding from the rule applied to grazing and agricultural lands as to the time when the preference shall be exercised. The fact that the custom and practice of conducting sales or leases at public auction where the former lessee had a preference right had previously been used only as to grazing or agricultural land does not make the custom or practice inapplicable to oil and gas lands sold or leased subject to the same preference right in the absence of any other custom or practice relating to such lands. As well might it be said that the custom or practice was inapplicable to land in Petroleum

county because previously it had not been resorted to in that county. There is not sufficient difference in the wording of sections 1805.35, 1805.21, as amended by Chapter 20, Laws of 1941, and section 1805.75, all relating to agricultural land and section 1882.15 relating to oil lands to compel a different method of conducting sales or leases and particularly as to the method and time of allowing preference to prior lessees.

Section 1882.7, Revised Codes, empowers the board to prescribe rules and regulations. Section 1882.15, as above noted, also empowers the board to prescribe the terms and conditions upon which the privilege of re-leasing by the prior lessee may be exercised where the legislature has not itself prescribed the terms and conditions. The statute does not say when the prior lessee shall exercise his right of preference. That being so, the matter of fixing the time is left open for action by the board. Wyodak Chemical Co. v. Board of Land Com'rs, 51 Wyo. 265, 65 Pac. (2d) 1103.

The board's action was not arbitrary or unreasonable, but on the contrary was what seems to us for the best interest of the state and that the state might secure the greatest revenue possible for its lands consistent with its duty under section 1805.3, Revised Codes. But relator contends that, while the board has jurisdiction to prescribe the terms and conditions upon renewal of an oil and gas lease, what it attempted to do here is contrary to the statute. Its contention is that there is no "highest responsible bid" within the meaning of section 1882.15 until the board meets and accepts the bid as such. We do not agree with relator's contention in this respect and, in fact, relator on December 12th matched the bid before any action was taken by the board with respect to the bids. By "highest responsible bid" is meant the highest bid made in good faith. That the bid of the Farmers' Union Exchange was the highest bid all parties concede. That it was made in good faith was attested by the fact that the amount of the bid was actually deposited in the form of a certified check. To require the board to go further and de-

termine whether the Farmers' Union Central Exchange was a responsible bidder would seem to be a useless procedure if thereafter, in spite of an affirmative finding on that issue, relator exercises its rights of preference and demands the lease.

The law does not require the doing of useless acts. That is doubtless the reason, why the legislature used the phrase "highest responsible bid" rather than the phrase the "highest responsible bidder" in the clause granting the preference right to the prior lessee. There is no purpose in the board's inquiring into the qualifications of the highest good faith bidder if the prior lessee matches the bid. It is our view that the board properly prescribed that the preference in a prior lessee must be exercised, if at all, at the time of receiving the bids.

The right not having been exercised by relator at that time, the board was warranted in rejecting its demand for a lease and in awarding the lease to the Farmers' Union Central Exchange. Other points discussed in the briefs of counsel require no consideration.

The judgment is reversed.

Mr. Chief Justice Johnson not participating.

Mr. Justice Adair concurs.

Mr. Justice Morris (specially concurring).

I concur in the opinions by Mr. Justice Angstman. There appears to be strong equitable reasons why the Handel Oil Company should have had an opportunity to recoup the losses it sustained by its operations under the old lease, but it was tardy in complying with the regulations of the state board relative to the recent letting, and the record does not show any abuse of the discretion vested in the board by the legislature.

Mr. Justice Cheadle, (dissenting).

I dissent. It is my opinion that the real and ultimate question presented in this, and similar cases, is whether the holder of an oil and gas lease on state-owned lands is entitled, after

the expiration thereof, to a preferential right to a new lease thereon, upon matching or meeting the highest responsible bid made at public auction advertised as required by statute.

Section 1882.15, Revised Codes, provides that upon the expiration or termination of any state oil and gas lease embracing lands where oil and gas has been produced, the land board shall advertise such land for releasing and lease the same to *the highest responsible bidder* therefor at public auction. The following porviso is found in this section: "provided, however, that when the lands are advertised for re-leasing, any person, association, firm or corporation who held such lease at the expiration thereof, whether oil or gas had been produced thereunder or not, shall have the privilege of re-leasing the same at such highest responsible bid offered therefor, upon such terms and conditions as may be prescribed by the said board or by the legislative assembly; and the board shall have the privilege of rejecting any and all bids."

It is my view that such proviso gives the owner of a terminated lease on state lands an absolute preference right of releasing such lands at the highest responsible bid offered for a lease thereon at public auction. Such right was doubtless granted by the legislature as a reward to the prior lessee for the required development of such land, at his risk and to the enrichment of the state.

The majority opinion, I think effectively destroys such preference right and nullifies the legislative edict, by, in effect, requiring the prior lessee to become a bidder at the public auction, in competition with all others who may see fit to bid thereat. It is my view that such is not the effect of the law. The section quoted provides that the board shall have the privilege of rejecting all bids. The auctioneer, here, announced at the sale that all bids must be submitted to the board for approval, or otherwise. The only purpose of such announcement was the preservation of the right of the board to determine which of the offers was the "highest responsible bid," and which of those bidding was the "highest re-

sponsible bidder,'' or to reject any or all of the bids. Both of the quoted terms are included in the wording of the statute. I cannot agree that what is ''the highest responsible bid'' is to be determined solely by whether or not the amount bid is tendered at the time of the sale as evidence of the good faith of the bidder. The board, and the board alone, has the power of such determination, which obviously can be exercised only at a meeting subsequent to the auction.

In this instance the board did not act upon the bids until after relator had submitted its offer to match the highest · bid made at the auction. Under such circumstances I think the board had no discretion but to award the lease to the relator and respondent.

Much is said in the record and briefs concerning certain alleged violation by the relator of terms of the original lease, and my impression is that refusal of the board to award a lease to relator was principally based upon such violations. This the board had no right to do. If the lease had been breached, as claimed, such breaches had long since been waived, as appears in the record.

I shall not futilely encumber the record with arguments which I believe sustain my conclusion. Suffice it to state my belief that the majority of my brethren have nullified the intent of the law and of the legislature. The only remaining method of insuring the administration of the law in accordance with that intent is by legislative enactment, in such unmistakable language as to remove any doubt, to prevent the board from substituting its discretion for the legislative mandate.

Rehearing denied April 23, 1946.